Filed 5/8/14  Adamski v. Cal. Unempl. Ins. Appeals Bd. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(El Dorado)

| | |
|---|---|
| JOHN ADAMSKI,<br><br>    Plaintiff and Appellant,<br><br>  v.<br><br>CALIFORNIA UNEMPLOYMENT INSURANCE APPEALS BOARD,<br><br>    Defendant and Respondent. | C073501<br><br>(Super. Ct. No. SC20110006) |

In this appeal after remand, John Adamski appeals pro se from an order of the trial court upholding the decision of the California Unemployment Insurance Appeals Board (Board) that a lump sum payment Adamski received in November 2008 from his corporation, Adamski Construction, Inc., should be allocated to him equally in each of the four quarters of that year, thereby undermining Adamski's claim for unemployment benefits in 2008.  In his first appeal, *Adamski v. Cal. Unemployment Ins. Appeals Bd.* (Aug. 22, 2012, C069596) [nonpub. opn.] (*Adamski*), Adamski successfully argued the trial court failed to exercise independent judgment in considering the evidence raised in the administrative proceedings when it set aside the Board's decision.  We remanded the

1

matter to the trial court with directions to exercise its independent judgment on the evidence and to determine whether the Board abused its discretion.

Following a hearing, the trial court concluded the Board's ruling was supported by substantial evidence. It also impliedly found as a matter of law that a corporate officer who undertakes administrative duties on behalf of the corporation by (among other things) seeking work for the corporation is not "unemployed" within the meaning of the Unemployment Insurance Code and therefore does not qualify for unemployment benefits.

We conclude, to the contrary, that a corporate officer who maintains the corporation and attempts in vain to find work for the corporation is not performing services for which wages are payable and does not thereby render himself employed and ineligible for unemployment compensation benefits. (*Cooperman v. Unemployment Ins. Appeals Bd.* (1975) 49 Cal.App.3d 1 (*Cooperman*); *Carlsen v. Unemployment Ins. Appeals Bd.* (1976) 64 Cal.App.3d 577 (*Carlsen*).) We shall direct the trial court to reverse the decision of the Board.

BACKGROUND

We summarize the underlying facts from our prior opinion in *Adamski*.

Adamski is the owner and sole shareholder of a corporation, Adamski Construction, Inc., whose business involves building custom homes.

On or about March 31, 2008, Adamski finished building a custom "spec" house on High Meadows Trail, and engaged a realtor to sell the house. Thereafter, although Adamski actively looked for work for himself and his corporation, he was unsuccessful in securing employment or work for either, as the new-home construction industry suffered a serious downturn.

In September 2008, Adamski filed for unemployment insurance benefits. His application was approved, and he began collecting unemployment benefits.

In November 2008, the High Meadows Trail house sold. The Corporation paid Adamski $20,000, which Adamski characterized as a "delayed payment" for the work he had performed on the High Meadows Trail house prior to March 31, 2008; Adamski promptly contacted the Employment Development Department (EDD) to "explain the nature" of the $20,000 payment. Based on Adamski's representation that he had been unemployed since March 31, 2008, when construction was completed on the High Meadows Trail house, EDD agreed that Adamski continued to qualify for unemployment benefits. Adamski filed another claim for unemployment insurance benefits on September 6, 2009.

In October 2009, Adamski was contacted by EDD tax auditor Jason Powers. Powers was investigating whether the November 2008 payment Adamski received from the corporation represented wages for services he performed as a corporate officer over the course of 2008, and should be "spread," or allocated, over all four quarters of 2008. Powers determined that, during the whole of 2008, Adamski performed the duties necessary to maintain the corporation as a going concern, including actively looking for jobs for himself and the corporation, making bids, "trying to sell properties the business owns," and other administrative duties. Powers determined that "[t]he lump sum payment [Adamski received in November 2008] was for services rendered throughout the year." Powers cited Unemployment Insurance Code section 1282,[1] which provides: "If the remuneration of an individual is not based upon a fixed period or duration of time or if the individual's wages are paid at irregular intervals or in such manner as not to extend regularly over the period of employment, the wages for any week or for any calendar quarter for the purpose of computing an individual's right to unemployment compensation benefits shall be determined pursuant to authorized regulations. The

---

[1] Undesignated statutory references are to the Unemployment Insurance Code.

regulations shall, so far as possible, secure results reasonably similar to those which would prevail if the individual were paid his wages at regular intervals."

Powers concluded that the November 2008 payment should be treated as though it had been received in equal increments during each quarter of 2008. Powers filed an audit report of his findings and, based on that report, EDD issued a "notice of status of wages" reflecting Powers's conclusion that Adamski effectively received $5,000 in wages during each quarter of 2008.

### The Administrative Law Judge's Decision

Adamski challenged the wage adjustment and Powers's findings. An administrative law judge (ALJ) conducted an evidentiary hearing, at which Adamski appeared by telephone. The ALJ reasoned that Powers's findings properly reallocated $20,000 in wages received by Adamski from Adamski Construction, Inc., from $20,000 in the fourth quarter of 2008 to $5,000 per quarter. The ALJ determined that, because Adamski is the sole corporate employee, and he "worked consistently throughout 2008 . . . to keep the business operating [by] performing various tasks at his discretion, and as necessary for the operation of the business[,]" EDD properly reallocated Adamski's wages.

### The Board's Decision

The Board affirmed the ALJ's ruling, stating the weight of the evidence supports the ALJ's finding Adamski "worked consistently . . . from January 2008 through December 2008, to keep the business operating, performing various tasks at his discretion, and as necessary for the operation of the business," and the ALJ properly found that EDD was correct in allocating Adamski's $20,000 in wages in equal quarterly amounts over 2008.

### The Original Trial Court's Decision

Adamski filed a petition for writ of mandate to set aside the decision of the Board. In it, Adamski repeated his arguments below that EDD erred in concluding the single

4

"delayed" payment he received in November 2008 represented wages for work performed throughout 2008 as the sole corporate officer; the ALJ's finding that Adamski was employed after March 2008 was without evidentiary support; and the Board erred in refusing his proffered evidence because it was not "new." Exhibits to the petition included EDD guidelines; published appellate court decisions; EDD tax auditor Powers's field report; and the letter response prepared by Adamski's accountant, which stated that, after March 2008, Adamski's duties as a corporate officer were "limited to maintaining the corporation's licenses, maintaining this limited activity in the corporate checking account, and seeking construction projects for the business." The Board lodged the administrative record, but filed no return to the petition. (Code Civ. Proc., § 1094 [if no return is made, the case may be heard on the petitioner's papers].)

The trial court denied the writ of mandate, based on its conclusion that it must only determine "whether the agency has proceeded without, or in excess of jurisdiction ([Code of Civ. Proc., §] 1094.5[, subd.] (b),)" and, here, the Board "acted within the scope of its authority in determining the proper allocation of earnings for 2008. Unemployment Insurance Code section 1282 is clear when it provides that wages should be computed so as to 'secure results reasonably similar[] to those which would prevail if the individual were paid his wages at regular intervals.' [Unemp. Ins. Code, § 1282; Cal. Code Regs., tit. 22, § 1282-1.][2] [¶] Having determined that the application of the statute by the California Unemployment Insurance Appeals Board is proper," the trial court denied the writ.

---

[2] Title 22 of the California Code of Regulations section 1282-1 states: "For the purpose of determining a claimant's maximum benefits and weekly benefit amount for unemployment compensation benefits, when because of the irregular or infrequent intervals of the wage payments, wage records would not otherwise fairly indicate the claimant's employment during his base period, the department shall apportion the amount of such wage payments among the calendar quarters covered by the wages according to the length of employment in each of such quarters."

### *Adamski and the Trial Court's Decision on Remand*

On appeal from the trial court's denial of his writ of mandate, Adamski (among other things) complained that the trial judge "overlooked or purposely disregarded" evidence before the ALJ and the Board.  We agreed the trial court's obligation to determine whether the administrative decisions were contrary to the weight of the evidence required it to independently evaluate the evidence, rather than determine only whether the administrative proceedings had "legal defects."  We reversed the trial court's order denying Adamski's petition for writ of mandate, and remanded the matter to the trial court for it to exercise its independent judgment.

On remand, the trial court held a hearing at which Adamski appeared, was sworn and testified that the only work he performed after completion of the spec house were "administrative duties" performed purely to maintain the corporation as a going concern, so that it could continue to seek new work.  Adamski testified the minor duties he performed as a corporate officer during 2008 such as balancing the checkbook do not constitute "work" because the corporation had no work after the spec house was complete.  Carson Garrett, Adamski's accountant, testified that, after the spec house was built, Adamski "did do some accounting using his program Quickbooks" and paid a few bills, but he "really didn't have anything to do" because the corporation had no new building work.  Adamski argued the facts of his case are closely analogous to *Cooperman* and *Carlsen*, in which corporate officers were not disqualified for unemployment benefits because they took action to seek new work for their respective corporations.

The trial court issued a written ruling, denying Adamski's petition and adopting the findings and rulings of the Board as supported by the weight of the evidence.  The trial court concluded that, unless Adamski had been terminated by the corporation prior to the end of 2008, the $20,000 he received in November 2008 must be considered compensation for the miscellaneous corporate duties he performed throughout the year, pursuant to section 1282.  "In the proceedings below Mr. Adamski presented no evidence

6

whatsoever that would establish that his employment by the Corporation was ever terminated formally or informally. In fact, he admitted freely that he continued to engage in activity on behalf of the Corporation throughout 2008, to attempt to secure projects for the Corporation. Instead, he appears to simply, and incorrectly, assume that because the Corporation, his employer, had no active construction projects running during the last three quarters of 2008, this Court should conclude that the Corporation somehow terminated its only employee's employment, despite the fact that no evidence of any such termination was presented, and despite Adamski's admission that he continued to engage in activity on behalf of his employer, the Corporation, throughout the year 2008. [¶] This Court must assume that Mr. Adamski structured the form of his business as a corporation because of certain benefits he perceived that business form to offer. Having chosen to operate the business as a corporation that would then hire and pay him as an employee, Mr. Adamski is not free now to simply ignore that corporate structure of his employer when it is more convenient or financially advantageous for him to do so."

DISCUSSION

### I. Standard of Review

In reviewing a decision of the Board, the trial court exercises its independent judgment on the evidentiary record of the administrative proceedings and inquires whether the findings of the administrative agency are supported by the weight of the evidence. (*Lozano v. Unemployment Ins. Appeals Bd*. (1982) 130 Cal.App.3d 749, 754 (*Lozano*); Code of Civil Proc., § 1094.5.) In reviewing the trial court's ruling on a writ of mandate, the appellate court is ordinarily confined to an inquiry as to whether the findings and judgment of the trial court are supported by substantial, credible, and competent evidence. (*Lozano,* at p. 754.) However, where the probative facts are not in dispute, the determination of the trial court may be reviewed as a matter of law. (*Sanchez v. Unemployment Ins. Appeals Bd*. (1984) 36 Cal.3d 575, 585.)

7

## II. *Applicable Statutes*

Section 926 provides in relevant part that, except as otherwise expressly provided, " 'wages' means all remuneration payable to an employee for personal services, whether by private agreement or consent or by force of statute, including commissions and bonuses . . . ."

Section 1252 provides, in pertinent part:

"(a) An individual is 'unemployed' in any week in which he or she meets any of the following conditions:

"(1) Any week during which he or she performs no services and with respect to which no wages are payable to him or her.

"(2) Any week of less than full-time work, if the wages payable to him or her with respect to the week, when reduced by twenty-five dollars ($25) or 25 percent of the wages payable, whichever is greater, do not equal or exceed his or her weekly benefit amount. [¶] . . . [¶]

"(c) For the purpose of this section only 'wages' includes any and all compensation for personal services whether performed as an employee or as an independent contractor or as a juror or as a witness, but does not include any payment received by a member of the National Guard or reserve component of the armed forces for inactive duty training, annual training, or emergency state active duty."

Finally, section 1282, states: "If the remuneration of an individual is not based upon a fixed period or duration of time or if the individual's wages are paid at irregular intervals or in such manner as not to extend regularly over the period of employment, the wages for any week or for any calendar quarter for the purpose of computing an individual's right to unemployment compensation benefits shall be determined pursuant to authorized regulations. The regulations shall, so far as possible, secure results reasonably similar to those which would prevail if the individual were paid his wages at regular intervals."

8

### III. *The Trial Court Erred in Upholding the Board's Ruling*

Before we begin our analysis, it is "appropriate to point out that the Unemployment Insurance Act is a remedial statute and the provisions as to benefits must be liberally construed for the purpose of accomplishing its objects. [Citations.] The Legislature did not intend that the payment or withholding of benefits should turn on nice distinctions in the definitions of words like 'employed.' " (*Carlsen, supra*, 64 Cal.App.3d 584; *Matson Terminals, Inc. v. Cal.Emp.Com.* (1944) 24 Cal.2d 695, 707.)

Adamski complains on appeal that the trial court failed to exercise its independent judgment in assessing the evidence from the administrative hearing. We are inclined to agree: the trial court's ruling does not demonstrate an independent evaluation of the evidence before the Board.

However, here the facts were not seriously in dispute: EDD tax auditor Powers determined that, during the whole of 2008, Adamski performed the duties necessary to maintain the corporation as a going concern, including actively looking for jobs for himself and the corporation, making bids, trying to sell the spec house, and other administrative duties. Although Adamski and his accountant discounted somewhat the nature of the actions Adamski undertook in 2008 to keep the corporation going -- asserting he only balanced the checkbook, paid a few bills, and sought construction projects for the corporation -- Adamski did not dispute that, during 2008, he performed administrative duties on behalf of the corporation and tried to obtain new construction work. When, as here, it is not possible to draw more than one inference of an ultimate or intermediate fact, we do not resolve the matter on the basis of the inference which sustains the judgment of the trier of fact. (*Asociacion de Gente Unida por el Agua v. Central Valley Regional Water Quality Control Bd.* (2012) 210 Cal.App.4th 1255, 1267.) Instead, the matter is one of law for resolution by this court. (*Ibid.*)

The question of law that neither the Board nor the trial court attempted to resolve is whether, as a matter of law, the actions taken by Adamski on behalf of the corporation

9

in 2008 after the spec house was built and the corporation had no other work should be considered employment for which the $20,000 he received from the corporation in November 2008 must be considered compensation. Citing *Cooperman* and *Carlsen*, Adamski argues that question must be answered in the negative: his activities as a corporate officer in maintaining the corporation and looking for new construction projects after March 2008 did not constitute employment within the meaning of the Unemployment Insurance Act.

The case law supports Adamski's argument. In *Carlsen, supra,* 64 Cal.App.3d 577 the plaintiff was the president and owner of a corporation (Carlsen, Inc.) that performed general contracting work, for which Carlsen bid and negotiated the contracts. (*Id*. at pp. 580-581.) When Carlsen was unable to obtain any contracts to perform construction work because "all sources of construction work seemed to have dried up" (*id*. at p. 581), he filed a claim for unemployment insurance benefits. (*Ibid*.) Carlsen's claim was denied on the grounds he was not " 'unemployed' " within the meaning of section 1252, and his appeal and mandamus action were unsuccessful. (*Id*. at pp. 581-582.) The trial court found Carlsen was not unemployed so long as he was a person to whom wages were payable; he must be prepared at all times to take appropriate action when the affairs of the corporation required; and he continued to render services as corporate president. (*Id*. at p. 582.)

The Court of Appeal in *Carlsen* concluded instead that Carlsen was unemployed within the meaning of section 1252 and therefore eligible for unemployment insurance benefits. (*Carlsen, supra,* 64 Cal.App.3d at p. 584.) Carlsen did not continue to "perform services" for the corporation within the meaning of the Unemployment Insurance Act by looking for new employment for the corporation. "Services" are actions performed by a servant or helper, or pursuant to a contract for hire, not the actions of a corporation's owner assisting in the running of his own establishment. Nor were Carlsen's actions searching for work for the corporation performed for wages. (*Carlesen,*

10

*supra,* at pp. 584-585; see also *People v. Nest* (1942) 53 Cal.App.2d Supp. 856 (*Nest*) [same, reversing a conviction for violation of the Unemployment Insurance Act].) In so doing, the court declined to follow out-of-state cases holding that an individual who is a corporate officer is not unemployed merely because he elects during a particular period to receive no compensation (*Carlsen, supra,* at pp. 586- 587). Here, because the lack of construction jobs was not a matter over which Carlsen had any control, and was not the result of any deliberate decision to tailor the terms of this employment so as to avail himself of unemployment compensation benefits to which he should not have been entitled (*id.* at p. 588), Carlsen was effectively unemployed during the period he could not find new work for his corporation.

*Carlsen* relied in large part for its reasoning on *Cooperman, supra,* 49 Cal.App.3d 1. In *Cooperman,* the plaintiff, a cameraman-director, was the president and sole shareholder of the corporation. (*Id.* at pp. 4-5.) The corporation's sole business was to market plaintiff's personal services and when plaintiff obtained employment through the corporation, the corporation paid all the required taxes on his wages, including unemployment insurance. (*Id.* at p. 5.) Since the film industry's job market was an erratic one, there were periods when the plaintiff was unemployed and spent his time seeking work on behalf of himself and the corporation. (*Id.* at p. 5.) The question before the *Cooperman* court was whether the plaintiff was ineligible for unemployment compensation benefits during one such period. (*Id.* at p. 6.)

The *Cooperman* court concluded that the plaintiff was not rendered ineligible for unemployment benefits, because his inability to find work for himself or the corporation was due to the erratic nature of the industry and his corporate duties when out of work were extremely minimal. To follow the public policy set forth in the Unemployment Insurance Code, Cooperman must therefore be considered unemployed: "It would be against the public policy of this state to declare that he is employed solely because he holds the figurehead title of president of Image when he receives no compensation and

11

performs only *de minimus* services. Section 1252 of the California Unemployment Insurance Code, a remedial statute, must be liberally construed. [Citations.] [¶] '[The] fundamental purpose of unemployment insurance is to cushion the impact of such impersonal industrial blights as seasonal, cyclical and technological idleness, and thus to provide benefits to workers coming within the provisions of the act for unemployment not occasioned with their consent or brought about by their fault.' [Citation.] The payment of benefits to Cooperman would fulfill the policy and purpose of the act and would not be in contravention of that policy and purpose." (*Cooperman*, *supra*, 49 Cal.App.3d at p. 10.)

Carlsen and *Cooperman* are still good law, and we see no reason to depart from their reasoning. " '[W]hile it was the intention of the Legislature to protect the fund created under the act from chiselers, it was not its intention to put a premium on idleness, nor to discourage citizens out of employment from making early and earnest attempts to reestablish themselves economically to avoid becoming or continuing to be charges on society.' " (*Carlsen, supra*, 64 Cal.App.3d at p. 584, citing *Nest, supra*, 53 Cal.App.2d Supp. at p. 860.) It is undisputed that the corporation had no work after the spec house construction was completed in March 2008. Thereafter, Adamski actively, but unsuccessfully, sought work, and performed such duties to keep the corporation going. (Cf. *Carlsen,* at pp. 584-585.) In keeping the corporation operating and searching for new work for the corporation, however, Adamski did not perform services for which wages were payable within the meaning of section 1252. Thus, no part of the $20,000 he received in November 2008 when the spec house sold should have been attributable to time he spent during the whole of 2008 keeping the corporation going or looking for new work. Because that sum did not represent wages Adamski received from the corporation for services he performed as a corporate officer over the course of 2008, the Board should not have allocated the $20,000 Adamski received in November 2008 over all four quarters of 2008 as "wages" paid on irregular basis within the meaning of section 1282.

The trial court erred in denying Adamski's petition for a writ of mandate, and erred, specifically, in concluding that the corporation must have terminated Adamski's employment in order to avoid the legal conclusion that his efforts on its behalf constituted services for which wages were payable.  We shall reverse the judgment.

## DISPOSITION

The judgment is reversed.  The matter is remanded to the trial court with directions to grant Adamski's petition to require the Board to set aside its decision allocating the $20,000 Adamski received from Adamski Construction, Inc., in November 2008 as wages earned in equal quarterly amounts.  Adamski is awarded his costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1)(2).)


      BLEASE      , J.


We concur:


    RAYE     , P. J.


    MURRAY    , J.

13